**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JEFFREY LYNN SCOTT,

      Plaintiff-Appellant,

v.

CITY OF WICHITA; WICHITA
POLICE DEPARTMENT; NORMAN
WILLIAMS, Chief of Police, Wichita
Police Department; WILLIAM C.
WATSON, past Chief of Police,
Wichita Police Department; EDWYN
DIAZ, Officer of the City of Wichita
Police Department; GARY
KNOWLES, Officer, City of Wichita
Police Department,

      Defendants-Appellees.

No. 03-3285
(D.C. No. 00-CV-3212-MLB)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **MURPHY** , Circuit Judge, and **CAUTHRON** ,**
Chief District Judge.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     The Honorable Robin J. Cauthron, Chief District Judge, United States
District Court for the Western District of Oklahoma, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Jeffrey Lynn Scott, proceeding pro se, brought this civil rights case under 41 U.S.C. § 1983, alleging that defendants should be held liable for unlawful arrest, excessive force, and malicious prosecution. Scott now appeals the district court's grant of partial summary judgment and the judgment entered upon a jury verdict against Scott on his excessive force claim. We affirm.

**BACKGROUND**

Scott claims that the defendant police officers Edwyn Diaz and Gary Knowles entered his apartment, attacked him without provocation, assaulted his then-wife Natalie (who was pregnant at the time), and arrested the couple without probable cause. The officers' version of the incident is quite different. They deny using excessive force, stating that they came to the Scotts' apartment on a disturbance call and entered it through an open door. The officers state that they only used physical force against the Scotts after the Scotts became physically combative.

Scott was charged with aggravated battery of a law enforcement officer and with aiding and abetting the crime of aggravated assault on a law enforcement

officer; Mrs. Scott was charged with aggravated assault and aiding and abetting an aggravated battery. Although the Scotts were bound over after a preliminary hearing, the charges were eventually dismissed. Scott was convicted of murder before the assault charges went to trial and is presently serving a life sentence in Kansas state prison for a murder conviction. The Scotts' marriage ended in divorce.

Scott filed suit against the individual officers, William Watson and Norman Williams (who both served as chief of police for the City of Wichita), and the City of Wichita. He claimed arrest without probable cause; malicious prosecution; excessive force on the part of the officers; failure to properly train or discipline on the part of the police chiefs; authorization of excessive force by the City; and conspiracy. [1] The district court dismissed or entered summary judgment on all of Mr. Scott's claims except his Fourth Amendment claim of excessive force against the individual officers. That claim proceeded to a jury trial, during which his ex-wife testified–apparently to the detriment of Scott's position. The jury entered a verdict for defendants and the district court denied Scott's motion for a new trial.

---

[1] Scott also attempted to name his ex-wife and infant son (who was born almost six months after the incident) as plaintiffs. After the ex-wife filed an affidavit stating that she had sole custody of the child, that she was not interested in pursuing the lawsuit, and that she had not personally signed the pleadings, the district court dismissed all claims by these two individuals.

On appeal, Scott asserts the district court erred in: (1) entering a protective order and stay of discovery; (2) granting summary judgment based on allegedly inadmissible affidavits; (3) denying Scott's motion to strike defendant Diaz's affidavit, based on allegations of perjury; (4) denying Scott's repeated requests for appointment of counsel; (5) denying Scott's request to interview his ex-wife before she testified; (6) refusing to admit evidence of dismissal of the criminal charges that arose from Scott's arrest; (7) informing the jury, through a jury instruction, that Scott was incarcerated; and (8) denying Scott's motion for a new trial based on allegations of juror and judicial misconduct. Scott also renews his request, denied by the district court, to proceed on appeal *in forma pauperis*, with a transcript of the jury trial furnished at government expense.

## DISCUSSION

We address all of Scott's substantive appellate issues under the abuse of discretion standard. *See Johnson v. Unified Gov't of Wyandotte County*, 371 F.3d 723, 730 (10th Cir. 2004) (reviewing jury instructions); *United States v. Austin*, 231 F.3d 1278, 1281 (10th Cir. 2000) (reviewing the denial of a motion for new trial); *United States v. Youts*, 229 F.3d 1312, 1320 (10th Cir. 2000) (reviewing a trial court's decision as to how to proceed in response to allegations of juror misconduct or bias); *Gust v. Jones*, 162 F.3d 587, 597 (10th Cir. 1998) (reviewing district court decisions regarding the conduct of a trial); *Kidd v. Taos*

-4-

*Ski Valley, Inc.*, 88 F.3d 848, 853 (10th Cir. 1996) (reviewing the decision of a district court limiting or barring discovery); *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995) (reviewing a district court's evidentiary rulings); *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (reviewing a district court's denial of a motion for appointment of counsel). "Under this standard, we will not disturb a trial court's decision absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kidd*, 88 F.3d at 853 (quotations omitted).

With the abuse of discretion standard in mind, we turn to Scott's first two issues. These issues require little discussion, in that they both relate to the district court's summary judgment ruling in favor of the City and police chiefs. Because a jury later determined that the individual officers did not use excessive force, there is no need to parse Scott's arguments about summary-judgment procedure. The jury verdict forecloses Scott's excessive force claim against the municipality or supervisory defendants. *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (stating that "[i]t is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if a jury finds that the municipal employee committed no constitutional violation"); *Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 855

(10th Cir. 1993) (stating that supervisors may be liable only for participating or acquiescing in a constitutional violation committed by subordinates).

Our analysis of Scott's third claim is similar. Scott asserts that Diaz's affidavit, submitted in support of a summary judgment motion, was not made in good faith and that the district court erred in considering it. There is no indication that the district court abused its discretion in denying Scott's motion to strike. Further, the district court denied Diaz's request for summary judgment, as a consequence, the admission of the affidavit in no way prejudicially affected Scott's substantial rights. *See Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773, 776 (10th Cir. 1999).

Next, Scott argues that the district court improperly denied him appointment of counsel. "There is no constitutional right to appointed counsel in a civil case." *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989). Under 28 U.S.C. § 1915(e)(1), a district court is permitted to appoint counsel after considering, "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks*, 57 F.3d at 979 (quotation marks and citation omitted). In this case, the district court considered these factors, and found appointment of counsel unnecessary. We conclude the district court did not abuse its discretion in denying Scott's requests for appointment of counsel.

In another argument, Scott asserts that his due-process rights were violated when the district court refused his request to interview his ex-wife prior to her testimony. The record shows that the ex-wife was subpoenaed by Scott and that the district court observed that "[s]he was obviously terrified of plaintiff, and for good reason." R., vol. 8, doc. 281, at 1. Even in a criminal case, a witness may "refuse to be interviewed" without violating a defendant's rights. *United States v. Troutman*, 814 F.2d 1428, 1453 (10th Cir. 1987). The court did not abuse its discretion in deciding to comply with the ex-wife's wishes.

Scott also argues error in the trial court's decision to exclude as irrelevant evidence of dismissal of the assault charges that arose from the incident. The determination is supportable and is not indicative of an abuse of discretion. Moreover, the ruling actually protected Scott from prejudice arising from defendants' proffered evidence that the assault charges were dismissed only because Scott had been previously convicted of first-degree murder.

In a related issue, Scott asserts that the jury should not have been informed that he is incarcerated. However, jury instructions on Scott's incarceration were relevant to the damage calculation for lost income. We see no abuse of discretion in the giving of the challenged instructions.

Scott's last claim on appeal is that he is entitled to a new trial, based on his allegation that, when retiring to deliberate, a juror smiled and winked at the judge

-7-

when retiring to deliberate. In light of the amorphous and speculative nature of Scott's allegation, the district court did not abuse its discretion in denying a motion for new trial based on the alleged interaction.

As a final matter, we address Scott's renewed request for a transcript at government expense. The relevant statute, 28 U.S.C. § 753(f), provides: "Fees for transcripts furnished in [noncriminal, nonhabeas corpus] proceedings to persons permitted to appeal in forma pauperis shall . . . be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)." In its order denying § 753(f) request, the district court determined that Scott's trial statement that he could pay a $2,500 expert-witness fee was inconsistent with indigency. Further, the court determined that the case failed to present a substantial question for appeal. R., vol. 8, doc. 286, at 1-2. We agree with the district court's denial of the motion for a free transcript and we, in turn, deny the motion filed in this court.

**AFFIRMED** . Scott's motion for leave to proceed in forma pauperis on appeal and for a government-paid transcript is **DENIED** . His motion for submission of addendum attachments and motion to supplement the record are **GRANTED** to the extent that the attachments are copies of documents contained in the district court record.

Entered for the Court

Deanell Reece Tacha
Chief Judge