**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RICHARD C. OLSON,

    Plaintiff - Appellant,

v.

JAMES CARMACK; FRANK DENNY;
JOHNSON COUNTY, KANSAS; JAMES
REID GRAHAM; MARC LASSALLE;
ALLISON LASSALLE; LINDA
SYBRANDT; CITY OF LENEXA,
KANSAS; JON GUILFORD; KANSAS
CITY MISSOURI POLICE
DEPARTMENT; MARCUS REGAN;
JASON HINKLE,

    Defendants - Appellees.

No. 15-3282
(D.C. No. 2:15-CV-09156-JAR-GLR)
(D. Kansas)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Richard C. Olson, proceeding pro se and in forma pauperis, appeals from the district court's dismissal of his complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(ii). Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

On July 6, 2015, Mr. Olson filed a complaint in the United States District Court for the District of Kansas against thirteen defendants, including private individuals, government employees, and governmental entities. The complaint provided little more than vague claims that the defendants had violated Mr. Olson's state and federal constitutional rights. In response, defendants Frank Denning—the Sheriff of Johnson County, Kansas—and the Board of County Commissioners of Johnson County (collectively, the Johnson County Defendants), brought a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Johnson County Defendants argued that the complaint failed to set forth facts that could support a claim for relief, that the defendants were entitled to qualified immunity from suit, and that Mr. Olson's claims were barred by the applicable statutes of limitations. Mr. Olson filed an "Answer and Objection" to the Johnson County Defendants' motion to dismiss which provided a rambling narrative of the actions Mr. Olson alleged constituted a "conspiracy and wrongful[], dishonest investigation of [Mr. Olson] for all sorts of things," including murder and food stamp fraud.

Defendants Marc and Allison Lassalle, who are neighbors of Mr. Olson, also moved to dismiss the complaint under Rule 12(b)(6). The Lassalles argued that as

2

non-state actors they could not be liable for any alleged violations of Mr. Olson's civil or constitutional rights. Without otherwise responding to the Lassalles' motion to dismiss, Mr. Olson filed a motion to amend his complaint. He also requested the district court appoint him counsel due to a number of health issues.

Before the district court could rule on Mr. Olson's motions, additional defendants filed motions to dismiss the original complaint for failure to state a claim, including another neighbor, James Graham; the City of Lenexa and Detective Jason Hinkle (the Lenexa Defendants); the Kansas City, Missouri Policy Department (KCPD); James Carmack; and Linda Sybrandt. Mr. Olson filed various responses, whether or not permitted by the rules, which, in turn, prompted motions to strike and other replies from the defendants. These filings included objections to Mr. Olson's motion to amend his complaint, and objections to Mr. Olson's motion to appoint counsel.

On September 24, 2015, the magistrate judge issued a Memorandum & Order addressing some of the motions outstanding after this flurry of activity. Of relevance here, the magistrate judge granted Mr. Olson's motion to amend his complaint because it was filed within the time Mr. Olson could amend as a matter of right under Federal Rule of Civil Procedure 15(a)(1)(b). But the magistrate judge admonished Mr. Olson that "Fed. R. Civ. P. 15(a) provides a procedure for amending a complaint—a procedure [Mr. Olson] must follow despite proceeding *pro se*." The magistrate judge also denied Mr. Olson's request for the appointment of counsel,

3

concluding Mr. Olson had failed to demonstrate a colorable claim for relief on the merits.

Mr. Olson amended his complaint on September 23, 2015, by refiling the original complaint with his motion to amend his complaint attached.[1] The amended complaint states[2] the defendants have violated the "1st 4th 5th and 14th Amendments to the U.S. Constitution as well as State Constitution," and as support, alleges only that

> [f]rom 3-1-2013 to 8-20-2013 all defendants through a wrongful conspiracy did a CID investigation on me knowing I was a sick man during this time I was in intensive care at KCMO VA. After discharge all defendan[t]s through a conspiracy ac[c]used me of a murder investigation causing me to have a stroke and blood clots on brain causing legal blindness.

The attached motion alleges that: (1) Linda Sybrandt ordered an investigation of Mr. Olson, and his family; (2) Mr. Carmack represented himself at various times as a deputy with the Johnson County Sheriff's Department, a fraud investigator for the food stamp program, an agent with the Kansas Bureau of Investigation, an agent with Homeland Security, and a member of the "Metro Squad"; (3) Mr. Carmack reviewed Mr. Olson's medical records at the Kansas City, Missouri Veterans Administration (VA) hospital and interfered with his medical treatment; (4) Mr. Carmack and the Metro Squad came to Mr. Olson's home on the day Mr. Olson was

---

[1] Mr. Olson also attached a document correcting the last name and address of one of the individual plaintiffs.

[2] Mr. Olson's filings, including the attachments to the Amended Complaint, are handwritten and use capitalization indiscriminately. We quote the allegations as written, with the exception that we have not repeated the random capitalization of words in the original.

released from intensive case and banged on his door "as if to break it," left a sign on the door from the Metro Squad, and then called Mr. Olson at least five times, stating that Mr. Olson was under investigation for murder; (5) during the course of interviewing Mr. Olson's neighbors, Mr. Carmack stated that Mr. Olson was under investigation for murder, fraud, and numerous other crimes; (6) the neighbors' interview statements were filled with untruths and lies; (7) the Lenexa defendants asked Mr. Olson to come to the police station because he was being investigated for murder; (8) all of the defendants acted with malice to ruin Mr. Olson's reputation; and (9) Mr. Olson suffered a stroke and became legally blind as a result of these actions by the defendants.

The defendants filed motions to dismiss the amended complaint for many of the same reasons they challenged the original complaint. Mr. Olson filed a series of responses with the district court reiterating the allegations and factually unsupported claims in his amended complaint. Mr. Olson also moved for a restraining order against Mr. and Mrs. Lassalle and Mr. Graham, enjoining them from "their wrongful[] continued surveillance, threats both verbally and physically and total action toward [Mr. Olson]." The Lassalles filed a response in opposition. While the new motions were pending, Mr. Olson sought leave to further amend his complaint in order to add a claim that all of the defendants had "conspired to deny [Mr. Olson] his Americans with Disabilities Act Rights by causing or cause to make happen a stroke and subsequent blindness from blood clots to the brain from all these defendants wrongful[] actions with intent, malice and planning to do harm."

5

On October 22, 2015, the district court entered a Memorandum Decision and Order denying Mr. Olson's motion for a temporary restraining order against the Lassalles and Mr. Graham. That ruling was followed on November 9, 2015, by a Memorandum and Order from the district court dismissing Mr. Olson's amended complaint with prejudice, denying the motion to file a second amended complaint as futile, and dismissing the Defendants' outstanding motions to dismiss, strike, and grant summary judgment as moot.

Mr. Olson filed this timely appeal, challenging the district court's order dismissing the amended complaint with prejudice. Because Mr. Olson has failed to state a claim against any of the defendants upon which relief can be granted, we affirm.

## II.    DISCUSSION

As in the district court, Mr. Olson represents himself on appeal. We accordingly construe his arguments liberally and hold his pleadings to less stringent standards than those applicable to formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But we will not undertake the role of Mr. Olson's advocate. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (stating that the obligation to liberally construe a pro se litigant's arguments stops "at the point at which we begin to serve as his advocate"). And our relaxed scrutiny of Mr. Olson's pleadings "does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. Conclusory statements unsupported by factual allegations are insufficient to state a

6

claim, even for a pro se plaintiff. "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury . . . ." *Id.*

Mr. Olson sought and was granted permission to proceed in the district court in forma pauperis, as permitted by 28 U.S.C. § 1915. But with that privilege comes a corresponding obligation to bring only meritorious litigation. Section 1915(e)(2)(B) provides that "the court *shall* dismiss the case at any time if the court determines that . . . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from suit." 28 U.S.C. § 1915(e)(2)(B). Here, the district court performed its duty under Section 1915(e)(B) and dismissed the amended complaint for failure to state a claim.[3]

We review de novo the district court's dismissal of Mr. Olson's amended complaint for failure to state a claim under Section 1915(e)(2)(B)(ii). *See Kay v. Bemis,* 500 F.3d 1214, 1217 (10th Cir. 2007). To withstand a motion to dismiss, a complaint must contain sufficient factual detail "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In turn, a claim is facially plausible when it provides sufficient factual allegations that, taken as true, allow the court to reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the burden falls

---

[3] Although the district court dismissed Mr. Olson's amended complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), it could also have dismissed it as frivolous, *id.* at § 1915(e)(2)(B)(ii), or because many of the defendants are immune from suit, *id.* § 1915(e)(2)(B)(iii).

7

squarely on the plaintiff to meet that threshold. *Twombly*, 550 U.S. at 556. This plausibility requirement ensures the complaint informs the defendant of the basis of the claims asserted against him and also serves to eliminate claims that, in the absence of further factual allegations, lack a reasonable prospect of success. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The need for factual detail is particularly important in claims brought against multiple defendants under § 1983. *See id.* at 1249–50. Mr. Olson's amended complaint fails to meet this threshold.

Here, the amended complaint alleges that thirteen defendants conspired to violate Mr. Olson's rights under the "1st 4th 5th and 14th Amendments to the U.S. Constitution as well as State Constitution." The defendants include private individuals, individuals acting in a public capacity, and government entities. But the amended complaint wholly lacks the factual detail necessary to make out a plausible claim against any of the defendants.

We begin our review with the claims asserted against the private defendants, who are each neighbors of Mr. Olson: James Reid Graham, Marc Lassalle, Allison Lassalle, and Regina Young (collectively Neighbors). We agree with the district court that if generously construed, Mr. Olson's amended complaint attempts to bring claims against them under 42 U.S.C. § 1983. But to state a claim under Section 1983, the plaintiff must demonstrate that the defendant deprived him of a federal constitutional or statutory right and that the defendant was acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*,

526 U.S. 40, 49–50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). "[M]erely private conduct, no matter how discriminatory or wrongful," is not actionable under § 1983. *Id.* at 50.

Here, the amended complaint contains no allegations that any of the Neighbors was acting directly under color of law. And although this color-of-state-law requirement can be established by allegations that a private actor conspired with a state actor, *see Dennis v. Sparks*, 449 U.S. 24, 29 (1980), the amended complaint is devoid of any factual allegations, as opposed to unsupported conclusions, that the Neighbors reached an agreement with a state actor to violate Mr. Olson's constitutional rights. *See Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." (quoting *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989))). Thus, even if we accept as true the allegations that the Neighbors' interview statements were filled with untruths and lies, the amended complaint fails to state a federal claim against the Neighbors for violation of Mr. Olson's civil or constitutional rights.

Turning now to the allegations against the public employees and their employers, we conclude they also fail to allege the deprivation of Mr. Olson's statutory or constitutional rights. *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50. The amended complaint avers that certain defendants ordered or conducted a murder investigation of Mr. Olson and a disability investigation of Mr. Olson's son, during

9

which they interviewed Mr. Olson's neighbors and viewed his medical records. But the amended complaint wholly fails to connect the allegations to any specific statutory or constitutional right.

With respect to the disability investigation, the amended complaint asserts only that the defendants investigated their belief that Mr. Olson's son "was able to work when he was not." Even if this allegation is taken as true and even if we assume Mr. Olson has standing to challenge an investigation of his son, there is nothing that prevents police officers from investigating the possible fraudulent receipt of federal benefits. *Bowen v. Roy*, 476 U.S. 693, 709 (1986) ("No one can doubt that preventing fraud in these benefits programs is an important goal.").

The amended complaint further alleges that certain state actors came to Mr. Olson's home, banged on his door, and then called him at least five times by telephone to tell him he was the subject of a murder investigation. As part of the investigation, Mr. Carmack allegedly represented that he was affiliated with a series of different governmental entities, and the Lenexa Defendants asked Mr. Olson "to come to police station because [he] was being investigated for murder." Even assuming all of these allegations are true and that Mr. Olson intended to claim a violation of his Fourth Amendment right to be free from unreasonable search and seizure or his Fifth Amendment right against self-incrimination, the conduct alleged does not state a claim. First, a request that a suspect engage in a consensual encounter with police, whether by voluntarily participating in an interview at the police station or otherwise, does not violate a federal constitutional right. *See Oregon v. Mathiason*,

10

429 U.S. 492, 495 (1977) (holding that defendant's Fifth Amendment right against self-incrimination was not implicated where defendant went voluntarily to the police station at the invitation of investigating officer); *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (holding that a voluntary encounter between a citizen and police "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature"). Second, an unsuccessful attempt to gain access to a citizen's home does not implicate the Fourth Amendment. *See Kentucky v. King*, 563 U.S. 452, 469 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."). Third, Mr. Carmack's use of false credentials in conducting the investigation fails to state a federal statutory or constitutional claim. *See Lewis v. United States,* 385 U.S. 206, 208–09 & n.5 (1966) ("Artifice and stratagem may be employed to catch those engaged in criminal enterprises."); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1146 (10th Cir. 2014) ("The general rule is that government agents may use deception to gain access to homes, offices, or other places wherein illegal acts are being perpetrated.").

Next, the amended complaint asserts that during the course of the investigation, the defendants told Mr. Olson's neighbors he was under investigation for murder, fraud, and other crimes. Even if Mr. Olson could assert a state tort action for defamation or slander, he has not identified the deprivation of a federal statutory or constitutional right. *See Paul v. Davis*, 424 U.S. 693, 711–12 (1976) (holding that claims of slander and defamation by state actors did not result in a deprivation of a

11

federal statutory or constitutional right). And to the extent the amended complaint alleges the defendants invaded Mr. Olson's privacy by reviewing his medical records at the VA Hospital, it does not set forth sufficient facts to support a federal statutory or constitutional claim. *See Whalen v. Roe,* 429 U.S. 589, 600–02 (1977) (holding that access of the government to private records in the absence of public disclosure "does not automatically amount to an impermissible invasion of privacy"); *Paul*, 424 U.S. at 712–13 (identifying the limited privacy interests protected by the Constitution); *Kerns v. Bader*, 663 F.3d 1173, 1184–85 (10th Cir. 2011) (holding that the law was not clearly established on whether a warrant was required to review suspect's medical records obtained voluntarily from third party).

Even if taken as true, the allegations in the amended complaint do not state a claim for the violation of Mr. Olson's statutory or constitutional rights. Thus, we AFFIRM the district court's order dismissing the amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).

ENTERED FOR THE COURT

Carolyn B. McHugh
Circuit Judge

12